IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARCUS AARON MALEY                                          PLAINTIFF

v.                          Civil No. 09-3024

SHERIFF ROBERT GRUDEK                                       DEFENDANT

**AMENDED REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

The Plaintiff, Marcus Aaron Maley (hereinafter Maley), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Maley is currently an inmate of the Franklin County Detention Center. The events at issue in this action occurred while Maley was incarcerated in the Clark County Detention Center from February 5, 2009, until his transfer to the Arkansas Department of Correction on May 28, 2009. Maley contends he was denied adequate medical care and was improperly charged for prescription medications.

Defendant filed a summary judgment motion (Doc. 20). Maley filed a response to the motion within the time specified by the court (Doc. 26).

**Background**

Maley was booked into the Carroll County Detention Center (CCDC) on February 5, 2009. *Defendant's Exhibit* (hereinafter *Defts' Ex.*) 1 at page 1. When Maley was booked in, he had with him a bag of pills with a note that the medications were Seroquel and Citalopram. *Id.* at page 4.

An inmate medical form was completed as part of the booking process. *Deft's Ex.* 1 at page 4. It reflected that when he was booked in Maley was carrying two medications Seroquel (8 tablets), used to treat symptoms of schizophrenia or to treat mania or depression in bi-polar patients, and

Citalopram (2 tablets), used to treat depression. *Id.* Maley also indicated he suffered from depression. *Id.*

On February 7th, Maley requested his Seroquel that had been placed in his property. *Deft's Ex.* 2 at page 1. He also asked for his contact lens case and glasses. *Id.* This latter request was approved and the request for medication was forwarded to the nurse. *Id.*

On February 9th, the nurse responded that she needed to know what pharmacy he received his medications from. *Deft's Ex.* 2 at page 1. She stated she could not give him what he brought with him because she could not "prove" they were what the "bags say." *Id.*

On February 10th, Maley complained he was billed for his medication when he had some in his property from the last jail. *Deft's Ex.* 2 at page 2. He stated he was transferred from another jail. *Id.* He indicates he only needed the Seroquel. *Id.* He asked when his medication could start. *Id.*

The nurse responded again stating she could not give him the medication he was brought in with because the medications were not in a prescription bottle. *Deft's Ex.* 2 at page 2. She stated she needed to know what pharmacy the he used so she could call and get the prescription transferred to the pharmacy here if he had a current prescription. *Id.*

On February 11th, Maley submitted a request asking about a deduction from his inmate account. *Deft's Ex.* 3 at page 1. He stated that fifty dollars had been deducted for prescription medication. *Id.* He pointed out that he didn't have any prescription medication. *Id.*

Maley stated that when he questioned the deduction he was told that he might have an existing bill. *Deft's Ex.* 3 at page 1. Maley asserted that his existing bill had been put on his fines and restitution and nothing should be deducted. *Id.*

-2-

Diane Clark responded that during Maley's last stay at the CCDC he had received $986.16 worth of medication. *Deft's Ex.* 3 at page 1. She stated she checked his disposition and this amount was not placed into his fines and restitution amount. *Id.* She stated the bill would remain on his account until paid in full. *Id.*

On February 13th, Maley indicated he used Burns Pharmacy in Garnett, Kansas. *Deft's Ex.* 2 at page 3. He again stated he only needed the Seroquel. *Id.* The nurse noted she had responded on February 18th and would explain further if necessary. *Id.*

On February 18th, Maley sent in a medical request asking for his prescription medication. *Deft's Ex.* 2 at page 4. He stated he had provided the information requested. *Id.* Additionally, he noted that after he was brought to Berryville, he was prescribed the medication by Dr. John Haas. *Id.* at pages 3-4.

The nurse responded that day stating she had contacted his Allen County, Kansas, pharmacy and there were no prescriptions that could be transferred. *Deft's Ex.* 2 at page 4. To get his prescriptions the nurse stated Maley needed to contact his attorney to get a court order to see someone at Ozark Guidance Center (OGC). *Id.* He was also asked if there was another doctor who could be contacted to get the prescriptions he needed. *Id.* She stated that all other avenues had been exhausted. *Id.*

On February 23rd, Maley requested a copy of Carroll County Ordinance 2007-40 and Ark. Code Ann. § 12-41-505. *Deft's Ex.* 3 at page 3. In response, he was told it was posted in the pods. *Id.*

On February 25th, Maley submitted a request to see a doctor A.S.A.P. because of complications with a vagnus nerve implant. *Deft's Ex.* 2 at page 5. The nurse responded that there was no such thing as a vagnus nerve implant.[1]  *Id.*

Nurse Brenda Schultz submitted a report on February 26th. *Deft's Ex.* 4 at page 1. She noted that Maley had come to the facility with a bag with some pills in it and a note that the pills were Seroquel and Celexa. *Id.* As the pills were not correctly packaged, she stated they could not be given to Maley. *Id.* Schultz indicated she had informed Maley that those medications could not be given to him but that she would contact his doctor or pharmacy in an attempt to get his prescriptions transferred to their pharmacy. *Id.* After several phone calls, Schultz called Iowa Pharmacy and was told that the doctor only wrote prescriptions for inmates of the Allen County Jail and the prescriptions could not be transferred. *Id.* Schultz indicates she then told Maley that he needed to have his attorney get a court order so he could be sent to OGC. *Id.*

On February 28th, Maley submitted a request to see a doctor not the jail nurse. *Deft's Ex.* 2 at page 6. In response, he was told that he must see the nurse before a doctor appointment is made. *Id.*

Maley also submitted a request asking about the $968 bill. *Deft's Ex.* 3 at page 5. He stated he still needed copies of the Carroll County Ordinance and the Arkansas statute. *Id.* He asserted that the statute said there would be a $20 charge for doctor visits and a $10 charge for medication. *Id.* He stated that his prior incarceration had only been for a month. *Id.* He asked that $20 be put back on his account. *Id.* In response, he was told to contact his attorney. *Id.*

---

[1]A disingenuous response at best. The vagus nerve is a cranial nerve passing through the neck and thorax and into the abdomen. Implants are used for the treatment of epilepsy or severe or chronic depression. *See* www.epilepsy.com/epilepsy/vns and www.mayoclinic.com/health/vagus-nerve-stimulation/MY00183.

On March 2nd, a Carroll County Circuit Court Judge entered an order directing county jail personnel to arrange for the Maley to see Dr. Burk at St. Johns to receive his prescription medication for depression. *Def't's Ex.*1 at page 2.   On March 4th, Maley submitted a request asking when he might be transported to the clinic. *Id.* at page 7.  He also asked to see a waiver that he was shown when he was taken to see the nurse. *Id.*  In response, the nurse stated Dr. Burk was not available and she was contacting the court for further instructions. *Id.*

On March 8th, Nurse Schultz noted that Dr. Burk had moved to Alabama. *Def't's Ex.* 1 at page 2.  Maley's public defender was notified and asked to obtain an order for an evaluation for depression. *Id. See also Def't's Ex.* 4 at page 2.

On March 11th, Maley submitted a medical request stating the Judge had ordered him taken to St. Joseph Clinic for his prescription medications. *Def't's Ex.* 2 at page 8.  He also asked for a copy of report they had talked about. *Id.*  In response, the nurse said the matter of his transportation to the clinic had been turned over to his attorney. *Id.*  The nurse also stated she had not received any reports regarding the nerve implant. *Id.*  She asked where he had it done. *Id.*

On March 24th, a court order was entered directing the Sheriff to take Maley to Ozark Guidance Center in Berryville, Arkansas. *Def't's Ex.* 1 at page 3.  On April 3rd, Maley was seen by the nurse for complaints of an abscess on the left upper side of his mouth. *Def't's Ex.* 7 at page 2.  She noted that he complained of pain under his eye and around his cheek. *Id.*  A notation was made that Maley had several rotten teeth, no swelling or drainage, and possible gum infection. *Id.*  An appointment was to be made with the dentist when it was approved. *Id.*

OGC records indicate Maley's diagnostic interview was performed on April 6th. *Def't's Ex.* 9 at page 2.  Maley's primary diagnosis was schizophrenia, paranoid type. *Id.*  He was also diagnosed

as having bi-polar disorder with his last episodes of depression involving severe psychological difficulties. *Id.* Finally, he was diagnosed with panic disorder with agoraphobia. *Id.*

Maley was seen again at OGC on April 7th by the staff psychiatrist, Dr. Robert S. Demski. *Defts' Ex.* 9 at pages 10-14. Records indicate Maley was seen again on April 8th, April 16th, and April 28th, for therapy sessions. *Id.* at pages 15-16, 17-18, 19-20. A May 26th record indicates Maley was to start on Seroquel 200 mg. in the morning and evening for one week and then increase the Seroquel to 400 mg. in the morning and evening. *Id.* at page 23. If the Seroquel made him too sleepy, he was authorized to take 800 mg. at bedtime. *Id.*

On April 7th, an appointment was scheduled for Dr. Riddick, a dentist, for April 16th at 10:00 a.m. *Deft's Ex.* 7 at page 2. On April 8th and April 18th, the appointment was rescheduled due to a "staffing difficulty." *Id.* On the 18th a notation was made that the jail now had to obtain permission from the ADC before Maley could be taken to the doctor. *Id.* A request was faxed but you cannot tell from the exhibit whether it was done on the 18th or the 28th. *Id.* On May 1st, a notation was made that approval for the dental appointment was received from the ADC. *Id.* On May 6th, an appointment was scheduled with Dr. Riddick for May 12th. *Id.* Thee are no other records indicating whether or not Maley was seen on May 12th.

On April 14th, Maley noted he had been sentenced on March 2nd. *Deft's Ex.* 3 at page 9. He stated he had the impression that his medical bill was put on the restitution. *Id.* He asked that the money deducted from his account on March 5th and March 11th be put back in his commissary account. *Id.*

In response, he was told his medical needs would be "picked up" by the ADC beginning thirty days from March 17th. *Deft's Ex.* 3 at page 9. However, he was informed the ADC did not cover nurse's visits or over the counter medication. *Id.*

On April 14th, Maley also put in a request asking for to be allowed to contact his attorney by phone and for an itemized statement on his commissary bill. *Deft's Ex.* 3 at page 10. In response, he was told he had been given the most itemized statement they had. *Id.*

Maley next submitted a request on April 23rd asking if he still had an OGC appointment that week. *Deft's Ex.* 2 at page 9. He also asked if he still had a dentist appointment. *Id.* In response, Maley was told that the OGC appointment had been rescheduled and the ADC had not yet approved his dentist appointment. *Id.*

On April 26th, Maley submitted a request stating that he had been sentenced on March 2nd and all restitution was taken off. *Deft's Ex.* 3 at page 11. He therefore requested that his money be replaced in his commissary account. *Id.* He also asked for saline solution. *Id.* In response, he was told that the proper paperwork had not been received from his sentencing and as soon as it was the outcome would be determined and any money to be returned would be placed in his account. *Id.*

Defendant submitted a one page medication administration record. It does not contain Maley's name or any kind of date on it. *Deft's Ex.* 6. The record is difficult to read. *Id.* However, it appears there may have been four days when someone, presumably Johnson, was offered Seroquel and Citalopram. *Id.* The Citalopram was refused on three occasions and it appears the entry for the remaining date has been crossed out. *Id.*

On May 28th, Maley underwent an intake examination at the ADC.  *Deft's Ex.* 8 at pages 1-9.

On June 1st, Maley underwent a diagnostic psychiatric interview and was diagnosed with a mood

disorder.  *Id.* at page 13.

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in

the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient

showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other

evidence, showing that a genuine issue of material fact exists."  *National Bank of Commerce v. Dow

Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt

as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence

to support a . . . verdict in their favor."  *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case founded on

speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (*citing Metge

v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendant has now moved for summary judgment.  First, defendant argues that Maley did not

allege in the complaint what capacity he was suing the defendant.  Therefore, defendant maintains the

case is against him in his official capacity only.  As there is no proof of an unconstitutional custom or

policy, defendant maintains he is entitled to judgment as a matter of law.   Second, defendant argues that Maley was not denied adequate medical care.  Defendant maintains efforts were made to obtain a prescription for the medication from Maley's medical care providers and when nothing could be located Maley's attorney was directed to obtain a court order for Maley to be evaluated for depression. Once the court order was entered, defendant points out Maley was transported to OGC.  With respect to any alleged charges for medication, defendant points out it does not violate the constitution  to require an inmate to pay for medical care.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Claims against individuals in their official capacities are

-9-

> equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

Although we are required to liberally construe complaints filed by *pro se* individuals, we do not believe there are any grounds to construe the complaint to be asserting an individual capacity claim. In this case, the plaintiff does not allege that the defendant was personally involved in anyway with the provision of medical care, the determination of what treatment he should receive, the decision

-10-

to make deductions from Maley's inmate account, or in responding to his requests for treatment or medication.  Instead, Maley's claims are based on the fact that the CCDC's policy or the inadequacy of the policy resulted in his being denied his constitutional rights.

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989)(*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).  "Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Gordon ex rel Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)(*citing Estelle*, 429 U.S. at 106)).

"This duty to provide medical care encompasses detainees' psychiatric needs."  *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002)(citations omitted).  *See also Vaughan v. Lacey,* 49 F.3d 1344, 1346 (8th Cir.1995)("Prison staff violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious mental-health-care needs.").  Clearly, a psychiatric or mental  condition can constitute a serious medical need and pose a risk of serious harm. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting  Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to

the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

In this case, Maley relies on the following facts to support his claim that defendant exhibited deliberate indifference:  (1) when he was booked in, he advised the booking officer that he had a psychiatric disorder and was taking medication for it; (2) he brought Seroquel and Citalopram with him; (3) he was refused his medication and was not transported to the clinic to obtain refills even though he eventually got a court order directing jail personnel to take these actions; (4) money was improperly deducted from his inmate account to pay for prescription medication allegedly provided him during a prior incarceration; and (5) after a prescription was finally written for him by the OGC, he states that he never received the medication.

In the circumstances of this case, we do not believe detention center had any duty to provide Maley with the medication he entered the jail with given its packaging.  However, it is clear that detention center personnel had knowledge that Maley was on medication for a psychiatric disorder. Maley was transported to the CCDC from another detention center.  He had been on medication immediately prior to his coming to the CCDC.  Additionally, it was noted on his booking documents that he was mentally ill and therefore ineligible to act as a trustee.  *See e.g., Defts' Ex.* 1 at page 1. Despite this information, no effort was made to have Maley evaluated by a medical doctor or a psychiatrist until after Maley obtained the March 24th court order.  Even then, detention center personnel required Maley to obtain another court order when it was discovered Dr. Burk was no longer practicing medicine.  This, of course, resulted in further delay in Maley being evaluated.

On May 26th, Maley was prescribed Seroquel. *Defts' Ex.* 9 at pages 21-23.  It is unclear from the record whether Maley actually received any Seroquel during his incarceration at the CCDC.  As

noted above, the medication log submitted is a single sheet, has no name or inmate number on it, and appears to cover the 1st through the 4th of some unidentified month.  Even on those four days, it appears "x" for refusal was marked on several of the dates.

Defendant has introduced no exhibits or affidavits setting forth the Carroll County policy regarding medical or psychiatric care.  Nothing has been submitted indicating what the booking officers are trained to do when they are told that an inmate being booked in has a medical, mental or psychiatric condition.  There is no indication in this case that personnel were trained to seek further information regarding medical or psychiatric conditions or regarding a detainee's claim he was on various medications.  Nothing has been provided explaining why a court order was needed in order for Maley to obtain a current prescription for the medication he was on.  Nothing suggests any consideration was given to possible side effects from an abrupt cessation of the medication. There is no evidence in the record suggesting how requests for medical or psychiatric treatment are handled.

While supervisors cannot be held liable on a theory of respondeat superior, they may be held liable if they knew the prisoner's "serious medical needs were not being adequately treated yet remain indifferent."  *Langford v. Norris*, No. 09-1862, 2010 WL 2813551 (8th Cir. July 20, 2010)(*citing Crooks*, 872 F.2d at 804)).  Clearly, when Maley was booked in, detention center personnel had actual knowledge that Maley was on medication for a mental or psychiatric condition. While the CCDC apparently had a nurse on duty, her efforts to assist Maley in obtaining his medications were sporadic and she took no steps to refer him to a doctor so that a new prescription for the medication could be obtained.  I believe there are issues of fact as to whether the County's policies, or lack thereof, caused, or contributed to, the alleged delays in the provision of medical or psychiatric care and prescription medications.  County policy, in regard to the care and custody of

-13-

detainees, is, of course, established by the Sheriff. Ark. Code Ann. § 12-41-502 (Supp. 2010)("The county sheriff of each county in this state shall have the custody, rule, and charge of the jail within his or her county and all prisoners committed in his or her county, and he or she may appoint a jailer for whose conduct he or she shall be responsible."). In short, defendant has clearly not established he is entitled to judgment as a matter of law with regard to the provision of medical care or treatment.

With respect to the deduction of money from Maley's inmate account allegedly made for prescription medication provided on a previous incarceration, we do not believe a constitutional claim is stated. While the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost. *See e.g., Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997)(deliberate-indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999). *See also Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001)(Prison inmate may file replevin action in state court to recover money taken from his prison account); *Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981)(no basis for due process claim where deductions from prisoner accounts were assessments for value received).

With respect to Maley's clam the deductions violated a Carroll County ordinance and a state statute, we find no claim of constitutional dimension is stated. *See e.g., Dahlen v. Shelter House*, 598 F.3d 1007 (8th Cir. 2010)(violation of state statute does not necessarily give rise to federal constitutional claims); *Booker v. City of St. Louis*, 309 F.3d 464, 467 (8th Cir. 2002)(violation of a municipal ordinance does not establish a constitutional violation for purposes of § 1983).

**Conclusion**

For the reasons stated, I recommend that defendant's motion for summary judgment (Doc. 20) be granted in part and denied in part.  Specifically, I recommend the motion be granted with respect to Maley's claims regarding deductions from his inmate account for the cost of prescription medication allegedly provided Maley during a previous incarceration.    In all other respects, the motion for summary judgment is denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **17th day of August 2010.**

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE